NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| H.T., a minor, by her parents, S.T. and S.C., S.T., individually, and S.C., individually, | |
| Plaintiffs, | Civ. No. 04-1633 (AET) |
| v. | **OPINION** |
| EAST WINDSOR REGIONAL SCHOOL DISTRICT and DAVID VARGAS, | |
| Defendants. | |

THOMPSON, U.S.D.J.

**I.      Introduction**

This matter comes before the Court on Defendant East Windsor Regional School District's ("the School District") Motion for Summary Judgment.[1] The Court has considered the written submissions of the parties, without oral argument, pursuant to Fed. R. Civ. P. 78. For the following reasons, the Court will deny the School District's Motion for Summary Judgment on Counts One and Two of the Complaint, will grant in part and deny in part the School District's Motion on Count Four, and will grant the School District's Motion on Count Five.

**II.     Background**

Plaintiff H.T. is a former student of Hightstown High School, a school within Defendant

---

[1]  Defendant David Vargas has also submitted a Motion for Summary Judgment, which the Court decides separately.

East Windsor Regional School District. As a fourteen-year-old ninth-grade student in December 2002, H.T. was sexually molested by Defendant Vargas, who was employed as a "Campus Monitor" by the School District. On April 8, 2004, H.T. and her parents, S.T. and S.C., sued the School District and Vargas in this Court, claiming, inter alia, violations of civil rights and emotional distress.

      H.T. claims that on occasions prior to the incident, Vargas told her she was pretty, touched her hair, and bought her a bagel. On the date of the incident, Vargas waved H.T. out of study hall, led her into a storage room or custodian's office, and sexually molested her as described in the parties' briefs. (See, e.g., Def. E. Windsor Reg'l Sch. Dist.'s Br. Supp. Summ. J. ("Def. Sch. Dist.'s Br.") at 2; Pls.' Br. Opp'n Defs.' Mots. Summ. J. ("Pls.' Br.") at 3.) H.T. was able to get away from Vargas and went back to study hall. H.T. claims that Vargas confronted her at her locker later that day and made a sexually explicit reference to the earlier incident, and that, a few days later in the hallway, he offered her money for sex. (Sweetser Cert. Ex. B at 111, 133.) Three to four weeks later, H.T. reported the incident to her friend, who told H.T.'s father, S.T. S.T. contacted the police, who arrested Vargas. On September 17, 2004, Vargas pled guilty to third degree endangering the welfare of a child and fourth degree criminal sexual contact. (Sweetser Cert. Ex. D at 2.)

      Plaintiffs claim that, before H.T.'s molestation, the School District was aware that Vargas conducted himself inappropriately with other students at Highstown High School. In 1998, a student named K.W. told her teacher, Barbara Jackson, that Vargas had asked K.W. to come to his house while his wife was going to be away. Ms. Jackson asserts that she reported that comment to then-Principal Martin Barlow, who discussed the matter with Ms. Jackson, told her

he would get back to her about it, and then later advised her that he had spoken to Vargas and that the matter had been resolved. (Sweetser Cert. Ex. F at 11-12, 14-17.) After Vargas's arrest, Ms. Jackson stated to the Division of Youth and Family Services ("DYFS") that, at the time, Mr. Barlow directed her "not to say anything to anybody." (Sweetser Cert. Ex. G.) Mr. Barlow asserts that he does not recall any complaints by teachers or students against Vargas. (Def. Sch. Dist.'s Br., Barlow Dep. (attached) 18:14-18, June 17, 2005.)

In the winter of 2001-2002, L.V., a parent, reported to the School District that Vargas had called her home after school hours, impersonating the school's athletic director, and said he was "watching out for" her ninth-grade daughter, N.V. After Vargas's arrest, N.V. told L.V. and the authorities that Vargas had tried to kiss her in his office. To L.V.'s knowledge, no action was taken by the School District, despite her complaints. (Sweetser Cert. Ex. I at 10-13, 30, 38-39.)

In the summer of 2002, four girls from Hightstown High School approached Katie Levanduski, a retired assistant to the school's vice principal, at a nail salon and told her that Vargas was inappropriately touching certain girls at the school. Mrs. Levanduski reported the girls' assertions to a clerk in the main office, then to Vice Principal John Ward. (Sweetser Cert. Ex. J at 11, 15-25.) Again, to Mrs. Levanduski's knowledge, no action was taken. (Id. at 26.)

Additionally, Patricia Brown, Personnel Director and Affirmative Action Officer at Hightstown High School, recounted in her statement to DYFS after Vargas's arrest that she had once had a conversation with him regarding a "too friendly" comment he made to a student. Ms. Brown did not take any further action after that conversation. (See Def. Sch. Dist.'s Br. at 4, Statement of Patricia Brown to DYFS, attached.)

H.T. and her parents claim that they suffer emotional, psychological, and social problems

due to the molestation. Plaintiffs seek relief on several Counts in their Complaint, alleging that: (1) under 42 U.S.C. § 1983, the School District violated H.T.'s constitutional rights by failing to protect her from Vargas; (2) the School District negligently supervised and/or negligently retained Vargas; (3) Vargas recklessly, carelessly, negligently, and/or intentionally injured H.T.; (4) both Defendants caused S.T. and S.C. extreme emotional distress, medical and related expenses for H.T.'s treatment, and loss of H.T.'s companionship and contribution; and (5) the School District is liable for Vargas's acts, under the doctrine of respondeat superior. Defendants filed Answers to Plaintiffs' Complaint and subsequently filed Motions for Summary Judgment.

**III.    Discussion**

    A.    Summary Judgment Analysis

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding whether summary judgment should be granted, the Court considers "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," and construes all facts and inferences in the light most favorable to the nonmoving party. Fed. R. Civ. P. 56(c); see also Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002). To survive a motion for summary judgment, a plaintiff cannot rely merely on the unsupported allegations of the complaint, and must present more than the "mere existence of a scintilla of evidence" in his favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

    B.    Count One

The School District argues that H.T.'s claims for constitutional violations, pursuant to

Section 1983, must be dismissed because Plaintiffs have failed to present evidence that its policies regarding reporting child abuse and sexual harassment were not implemented or were not required to be followed. (Def. Sch. Dist.'s Br. at 9.) Further, the School District asserts that H.T. cannot recover on this count under a theory of negligence or gross negligence, which is, at best, the most that Plaintiffs have demonstrated on the part of the School District. (Id.) Plaintiffs argue that the School District's failure to act on prior complaints about Vargas evidence its deliberate indifference to H.T.'s constitutional right to be free from sexual abuse in school, in violation of Section 1983. (Pls.' Br. at 16.)

To establish the School District's Section 1983 liability, Plaintiffs "must demonstrate both that the [School District's] policy, practice, or custom played an affirmative role in bringing about the sexual abuse and that the [School District] acted with deliberate indifference to that abuse." Black v. Indiana Area Sch. Dist., 985 F.2d 707, 712 (3d Cir. 1993). Deliberate indifference requires a showing of more culpability than mere negligent failure to recognize a high risk of harm. Colburn v. Upper Darby Twp., 946 F.2d 1017, 1025 (3d Cir. 1991).

Here, Plaintiffs have presented evidence that, prior to H.T.'s molestation, at least three separate reports were made to the School District about Vargas's sexual misconduct, but no action was taken. In response to one report, it is alleged that the principal told a teacher "not to say anything." (Sweetser Cert. Ex. G.) Additionally, the School District admits that Patricia Brown, an administrator at Hightstown High School, had a conversation with Vargas regarding his interaction with female students, but never took further action. (Def. Sch. Dist.'s Br. at 4; Statement of Patricia Brown to DYFS, attached.) Moreover, the School District's policy on reporting sexual abuse, including the New Jersey state requirement of direct reporting to DYFS,

was not distributed to school personnel, but was only made available to them in the main office, library, and perhaps guidance office, should they seek it out. (Sweetser Cert. Ex. P at 22-23.) Also, several school employees admitted that they had either never seen any policy regarding reporting sexual abuse or at least had not received training regarding the policy. (Sweetser Cert. Ex. F at 15, 22; Ex. Q at 8; Ex. R at 8-9.)

The Court finds that Plaintiffs have presented sufficient evidence to raise a triable issue of fact as to whether the School District's alleged acts and omissions rose above mere negligence and that it, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [H.T.] constitutional harm." Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 725 (3d Cir. 1989). Thus, the School District's Motion will be denied as to Count One.

### C. Count Two

The School District argues that H.T.'s state claims of negligence should be dismissed because the New Jersey Tort Claims Act ("NJTCA") dictates that: (1) the School District, as a public entity, cannot be liable for the act or omission of a public employee constituting a crime or willful misconduct; and (2) H.T. cannot recover damages against the public-entity School District for pain and suffering, as H.T. has not incurred both medical expenses in excess of $3,600, as well as a substantial and permanent loss of a bodily function. (Def. Sch. Dist.'s Br. at 6.) Plaintiffs argue that H.T.'s state claims against the School District are based upon the School District's own negligence, and that H.T. has sustained a substantial and permanent loss of a bodily function from her sexual molestation. (Pls.' Br. at 19-25.)

The NJTCA establishes a rule of absolute immunity for public entities when a certain

threshold is not met for certain kinds of injuries. The statute provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease . . . .

N.J. Stat. Ann. § 59:9-2(d). The School District admits that recovery is permitted under the NJCTA for psychological harm resulting from sexual molestation. (Def. Sch. Dist.'s Br. at 7); see also Collins v. Union County Jail, 696 A.2d 625, 632 (N.J. 1997) (holding that a claim of permanent psychological harm in the form of posttraumatic stress disorder resulting from rape by a corrections officer constitutes "permanent loss of a bodily function" within the meaning of the NJTCA); Frugis v. Bracigliano, 798 A.2d 614, 629 (N.J. Super. Ct. App. Div. 2002) (concluding that sexual abuse or molestation of a student by a school principal, if accompanied by substantial and permanent posttraumatic stress disorder, constitutes a "permanent loss of a bodily function"), *rev'd on other grounds*, 827 A.2d 1040 (N.J. 2003). The School District argues, however, that H.T has produced insufficient evidence that she has sustained a substantial permanent injury, as required by the New Jersey Supreme Court for a plaintiff to meet this threshold. (Def. Sch. Dist.'s Br. at 6-7 (citing Brooks v. Odom, 696 A.2d 619, 624 (N.J. 1997).) The School District further argues that H.T. has not produced evidence that her medical bills are in excess of $3,600.

H.T. stated in her answers to interrogatories that she has changed as a person, she is irrationally angry, she is apathetic, she has behavioral problems, she has familial problems, she is ashamed, embarrassed, and humiliated, she cannot help but think about the molestation, and that

she feels limited in her abilities to carry on a normal life. (Sweetser Cert. Ex. K.) Plaintiffs have also submitted an expert report that states that "H.T. reported emotional/psychological symptoms consistent with the research derived profile of victims of sexual victimization," which includes posttraumatic stress disorder, as well as other chronic effects. (Sweetser Cert. Ex. L at 6-7.) Finally, while no specific dollar amount for medical treatment expenses has been alleged, the deposition transcripts of H.T., S.T., and S.C. indicate that H.T. was treated by either a psychiatrist or psychologist in the months after the incident as well as in the months leading up to her deposition, and possibly continuing after that time. (See Sweetser Cert. Ex. B at 138-40; Def. Sch. Dist.'s Br., H.T. Dep. (attached) 185:12-187:17, 204:5-207:16, Nov. 15, 2005; S.T. Dep. (attached) 65:1-66:11, Jan. 20, 2006; S.C. Dep (attached) 29:8-34:9, 41:7-42:18, Nov. 15, 2005.)

In light of this evidence, the School District's Motion for Summary Judgment on Count Two will be denied. First, the Court agrees with Plaintiffs that H.T.'s claims against the School District in Count Two are based upon its own alleged negligence, not Vargas's "crime or willful misconduct." Second, the Court finds a genuine issue of material fact as to whether H.T.'s injuries satisfy the threshold for recovery under the NJTCA—a substantial and permanent loss of a bodily function with medical treatment expenses over $3,600.

D.   Count Four

The School District argues that S.T. and S.C. cannot recover for their alleged emotional damages under either Section 1983 or the NJTCA. Plaintiffs argue that S.T. and S.C. have viable per quod claims under federal and state law.

1.   S.T. and S.C.'s Emotional Distress

The School District argues that S.T. and S.C. cannot recover emotional distress damages

because they have not sustained a "direct injury," and because they did not witness the assault. (Def. Sch. Dist.'s Br. at 7-8.)  Because S.T. and S.C. were neither present at the time of H.T.'s molestation, nor did they observe it, they may not recover for their own emotional distress under either an intentional or negligent infliction theory.  See Buckley v. Trenton Saving Fund Soc., 111 N.J. 355, 366 (1988) (stating "where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress . . . to a member of such person's immediate family who is present at the time . . . ."); Portee v. Jaffee, 84 N.J. 88, 101 (N.J. 1980) (requiring "observation of the death or injury at the scene of the accident" to establish a prima facie case of negligent infliction of emotional distress under New Jersey law).  Further, S.T. and S.C. claim emotional distress from observing and experiencing H.T.'s resultant personality change, not from her molestation itself.  (See Pls.' Local R. 56.1 Statement of Undisputed Material Facts ¶¶ 59-66.)  Therefore, even construing the facts in the light most favorable to S.T. and S.C., there is no genuine issue of material fact as to the School District's infliction of emotional distress upon S.T. and S.C.  Thus, the School District's Motion is granted on Count Four to the extent that S.T. and S.C. are seeking recovery for intentional or negligent infliction of emotional distress.

        2.     S.T. and S.C.'s Per Quod Claims

Plaintiffs argue that because the Third Circuit has held that a parent whose child has died as a result of unlawful state action (in placing the child in the care of an abusive parent) may maintain an action under Section 1983 for deprivation of liberty, that right should be extended to a parent whose child has been molested by a public school employee.  (Pls.' Br. at 17 (citing Estate of Bailey v. County of York, 768 F.2d 503, 509 (3d Cir. 1985).)  This Court, however,

declines to so extend the right, especially in light of the Third Circuit's reluctance to further expand the ruling in Bailey. See McCurdy v. Dodd, 352 F.3d 820, 829 (3d Cir. 2003) (refusing to extend a right of action under Section 1983 to a parent whose adult son was killed by police officers and "hesitat[ing] to extend the Due Process Clause to cover official actions that were not deliberately directed at the parent-child relationship"). Thus, the School District's Motion is granted as to Count Four to the extent that S.T. and S.C. seek recovery under federal law.

     Plaintiffs also argue that they may assert, under New Jersey law, claims for loss of H.T.'s companionship and society due to her negligent treatment by the School District. The New Jersey Supreme Court has not definitively stated whether a parent may recover for loss of companionship and society of their injured minor child due to a defendant's negligence. When a particular question of law has not been authoritatively decided by a state's highest court, the federal court applying the state's substantive law must predict what the highest state court would decide were it confronted with the question. See Yohannon v. Keene Corp., 924 F.2d 1255, 1264 (3d Cir. 1991). In so doing, the federal court should give particular attention to the decisions of intermediate state appellate courts. See Aetna Cas. & Sur. Co. v. Farrell, 855 F.2d 146, 148 (3d Cir. 1988). The Appellate Division has firmly stated that parents' per quod damages resulting from negligent injuries to a minor child are limited to loss of services, earnings, and medical expenditures, and do not include loss of companionship and society. See McDonald v. Lederle Labs., 841 A.2d 948, 952 (N.J. Super. Ct. App. Div. 2004); Tynan v. Curzi, 753 A.2d 187, 189, 192 (N.J. Super. Ct. App. Div. 2000) (overruling two lower court negligence cases allowing parents to recover for loss of their children's companionship and society, but approving another lower court case that distinguished intentional tort cases, where such recovery was allowed).

Unlike H.T.'s claims against Vargas, which assert intentional torts, H.T.'s state claims against the School District assert negligence. Therefore, in light of the Appellate Division decisions prohibiting this kind of recovery in negligence cases, the School District's Motion for Summary Judgment on Count Four is granted to the extent that S.T. and S.C. seek recovery for the loss of H.T.'s companionship and society under New Jersey law. As the School District has not specifically argued for summary judgment on S.T. and S.C.'s other claims in Count Four, for medical and related expenses and loss of contribution from H.T., the School District's Motion on Count Four is denied as to those claims.

### E. Count Five

Count Five asserts the School District's liability for Vargas's acts under the doctrine of respondeat superior. (Compl. at p. 5.) Plaintiffs state in their brief that their "state claims against the [School] District are premised on the [School] District's own wrongful acts, not respondeat superior." (Pls.' Br. at 19.) Thus, Plaintiffs seem to assert this cause of action solely under their federal, Section 1983 claim. Because a municipal entity cannot be held liable under Section 1983 on a respondeat superior theory, Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1987); Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006), the School District's Motion will be granted as to Count Five.

### IV. Conclusion

For the foregoing reasons, the School District's Motion for Summary Judgment will be granted as to Count Four, but only to the extent that S.T. and S.C. seek recovery against the School District for: (1) intentional and/or negligent infliction of emotional distress; (2) any damages under federal law; and (3) loss of H.T.'s companionship and society under New Jersey

law.  The School District's Motion also will be granted as to Count Five.  The School District's Motion will be denied as to Count One, Count Two, and as to the remaining claims in Count Four.  The accompanying Order will be entered.

                                                     s/ Anne E. Thompson  
                                               ANNE E. THOMPSON, U.S.D.J.

Dated:  11/3/06